**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2025-NMCA-004

Filing Date: December 16, 2024

No. A-1-CA-40782

AVANGRID, INC., a New York corporation,

      Plaintiff-Appellant,

v.

SECURITY LIMITS, INC. and PAULO
SILVA,

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan Biedscheid, District Court Judge**

Marrs Griebel Law, Ltd.
Clinton W. Marrs
Patrick J. Griebel
Albuquerque, NM

Steptoe & Johnson LLP
Thomas Watson
Los Angeles, CA

for Appellant

Mayer LLP
Kendrick W. Dane
Albuquerque, NM

Langley & Banack, Inc.
Dylan O Drummond
San Antonio, TX

Business Law Southwest LLC
Alicia M. LaPado
Donald F. Kochersberger, III
Albuquerque, NM

for Appellees

**OPINION**

**YOHALEM, Judge.**

**{1}** Plaintiff Avangrid, Inc., an energy company, appeals the district court's order dismissing its complaint for damages against Security Limits, Inc. (SLI) and Paulo Silva (collectively, Defendants), pursuant to New Mexico's strategic litigation against public participation statute (Anti-SLAPP statute), NMSA 1978, §§ 38-2-9.1 to -9.2 (2001), and the *Noerr-Pennington* doctrine.[1] The *Noerr-Pennington* doctrine provides immunity from lawsuits that are brought to discourage or punish a defendant's exercise of their right under the First Amendment to the United States Constitution to petition the government, so long as the petitioning activity is not a sham. In order to be a sham, the petitioning activity must be both (1) "objectively baseless, in the sense that no reasonable [petitioner] could realistically expect success on the merits," and (2) pursued with an improper subjective motive. *Cordova v. Cline*, 2017-NMSC-020, ¶¶ 24, 28, 36, 396 P.3d 159 (internal quotation marks and citation omitted). Avangrid's complaint sought damages for defamation, tortious interference with contract, and prima facie tort based on injury to Avangrid's reputation and economic interests allegedly caused by Defendants' public comments to the New Mexico Public Regulation Commission (the Commission or the PRC) in opposition to Avangrid's proposed merger with PNM Resources, Inc. (PNMR). Avangrid's complaint alleged that Defendants' public comments were made in furtherance of an attempt to extort contract work from Avangrid. The district court granted Defendants' special motion to dismiss, agreeing with Defendants that their public comments were petitioning activity protected by the *Noerr-Pennington* doctrine. Finally, the district court denied Avangrid's motion to amend its complaint, and awarded attorney fees to Defendants. We conclude that Defendants' petition is protected activity under the *Noerr-Pennington* doctrine and not a sham because the statements were not "objectively baseless"; we accordingly do not address whether Defendants' petition was pursued with an improper subjective motive. *See id.* ¶ 28. We affirm the order granting dismissal, the denial of the motion to amend, and the amount of attorney fees awarded.

**BACKGROUND**

**I.      The Facts Pleaded in the Complaint**

**{2}** Avangrid's complaint pleads the following facts:[2] Avangrid is a multibillion-dollar utility company that provides energy services to customers in New York and New

---

1The *Noerr-Pennington* doctrine is derived from the United States Supreme Court opinions in *Eastern RailRoad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965); and *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972), and was adopted by our Supreme Court in *Cordova v. Cline*, 2017-NMSC-020, ¶ 1, 396 P.3d 159.

2Although the district court stated at the hearing on the motion to dismiss that it relied solely on the pleadings, the published decision of the PRC denying the merger was addressed in the briefs and in the hearing on the motion to dismiss. *See* "*Order on Certification of Stipulation*," Public Service Company of New Mexico, NMPRC Case No. 20-00222-UT (Nov. 1, 2021) (PRC Decision). Moreover, Avangrid asked

England, as well as in more than twenty other states. Iberdrola, S.A. (Iberdrola), Avangrid's majority shareholder, is headquartered in Spain. Silva is the chief executive officer and/or owner of SLI, a company that provides information technology and security services to utility companies.

**{3}**     In 2019, SLI provided technology security services through a subcontract with Unlimited Technology, Inc. to Avangrid Service Company, a subsidiary of Avangrid. When SLI's work on that subcontract concluded, Unlimited Technology stopped using SLI's services. According to the complaint, Silva improperly contacted Avangrid in an attempt to resolve a billing dispute with Unlimited Technology. SLI also sought to provide technology security services directly to Avangrid.

**{4}**     Separate from its work with SLI, in October 2020, Avangrid sought to enter the New Mexico energy market. Avangrid and PNMR filed an application with the PRC for approval of a merger of the two companies. A merger of utility companies is among the transactions that, by statute, requires Commission approval. *See* NMSA 1978, § 62-6-12 (1989). The Commission is charged with investigating the companies seeking to merge with a New Mexico utility, and can approve the merger only if the Commission finds it to be in the public interest. *See* NMSA 1978, § 62-6-13 (1941) (providing that the Commission shall not approve any proposed merger that is inconsistent with the public interest). The Legislature, by statute, requires that "[a]ll hearings and investigations, held or made by the [C]ommission, . . . be public," NMSA 1978, § 62-10-5 (1941); and has authorized the Commission to promulgate rules and regulations governing the conduct of Commission hearings, *see* NMSA 1978, § 62-14-10 (1997).

**{5}**     Upon receipt of the Avangrid-PNMR merger application, the Commission appointed a hearing examiner to conduct an adjudicatory hearing, at which evidence would be taken and findings and conclusions prepared for the Commission's consideration. *See* NMSA 1978, § 62-10-14 (1941). The hearing examiner was also charged by the Commission with conducting public hearings to allow the general public to express their views about the merger. *See* 1.2.2.23(F) NMAC (the Rule) (stating that "the purpose of this rule is to facilitate [public] participation"). The Rule provides that "[a]ll interested persons [shall be given] the opportunity to have input into cases which affect them." *Id.* The Rule further provides that comments submitted by the public will be included in the record on the pending matter, but "shall not be considered by the [C]ommission as evidence." *Id.* Comments on the Avangrid-PNMR merger were taken through Zoom hearings held on August 9 and December 1, 2021. The hearings were publicly streamed on YouTube.

**{6}**     Beginning on July 11, 2021, and continuing to August 4, 2021, Silva sent a series of emails to Avangrid inquiring about the status of a contract (the ICT Engineering Tender) that SLI had bid on two years earlier. Avangrid replied that the company had

---

the court at the hearing to take judicial notice of matters in the public record, specifically mentioning the PRC Decision in that request. Although the district court did not make an explicit ruling on the request for judicial notice, we assume, because of its importance to the *Noerr-Pennington* doctrine analysis, that the district court considered the PRC Decision in its ruling. We accordingly consider it in this opinion.

not awarded the contract "[t]o date." Silva emailed several more times asking Avangrid to clarify whether it was still planning to award the contract, and if so, when. On August 4, Silva sent his last email requesting an update. Later that same day, Silva emailed Avangrid's in-house counsel, copying high-level executives at Iberdrola. The email, quoted in full in Avangrid's complaint, stated the following:

> Please be advised that [SLI] will be filing next week a motion to intervene after the deadline; C[ase N]o. 20-00222-UT with the [PRC] in the State of New Mexico. I have also been invited to participate in the Public Hearing scheduled for August 9th. I provide a summary for your review in the interest of "Full Disclosure[.]" Should you have any questions, please do not hesitate to contact us.

> Please see email chain below. There has been no more responses to the ICT Engineering Tender, a tender award that has been pending in excess of two years. I also take this opportunity to request you ensure John Allen (Former Director) has not resigned from AVANGRID in the possession of [SLI]'s Ironclad Design Materials, a.k.a. AVANGRID SECURE DOMAIN RUNBOOK. This would be a violation of the enclosed agreement.

**{7}** Avangrid's complaint construes this August 4, 2021, email as a threat to accuse Avangrid of misconduct or crimes at the Commission's public hearing unless Avangrid grants the tender award to SLI. Avangrid alleges that this conduct fits the definition of extortion in New Mexico criminal law, *see* NMSA 1978, § 30-16-9 (1963). The complaint describes the August 4 email as "a threat to provide negative information about Avangrid to the PRC considering Avangrid's merger with PNMR unless Avangrid responded positively to Defendants' effort to obtain [a valuable contract] from Avangrid."

**{8}** Avangrid's complaint then cursorily describes the public comments that Silva provided with the August 4 email. Avangrid does not attach to the complaint the summary of the proposed comments referenced in the email, nor does the complaint describe the content of that summary. Avangrid states only that the summary of Silva's public comments attached to the email, "contained numerous false statements and allegations about [Avangrid] which, if believed, would damage [Avangrid's] reputation and harm Avangrid's merger efforts with PNMR."

**{9}** Avangrid did not respond to Silva's August 4 email. Silva appeared at the Commission's public comment session on the Avangrid-PNMR merger five days after the email, submitting comments on behalf of both SLI and himself. The complaint describes Defendants as making the following statements in their public comments: (1) "there were procurement-corruption, extortion, and coercion tactics within Iberdrola [Avangrid's principal shareholder and a party to the merger] and Avangrid," (2) "Iberdrola and Iberdrola-affiliated officers have previously been indicted in Spain for corporate espionage and procurement fraud," (3) Avangrid presented "risks to national security," and (4) "Avangrid is obtaining lots of information through incorrect channels about these proceedings." Silva and SLI also submitted comments at the Commission's

December 1, 2021 public hearing on the merger. The complaint reports that Silva commented at that hearing that he had "discovered that Avangrid's conduct artificially raised rates paid by consumers in New York and illegally enriched Avangrid's favorite bidders."

**{10}** Five days after the second public hearing, Avangrid filed the complaint in this case, alleging that Silva's and SLI's comments at both public hearings (1) were defamatory, (2) were made in furtherance of an extortion effort, and (3) tortiously interfered with its contract with PNMR and the merger. The complaint sought damages. Five days after Avangrid filed its complaint, the PRC denied the merger, finding that it was not in the public interest. *See* PRC Decision.

## II.    The District Court Proceedings

**{11}** Relying on New Mexico's Anti-SLAPP statute, Defendants filed a special motion to dismiss in the district court claiming that Avangrid's lawsuit sought money damages for conduct or speech before a government decision-making body, and that it was filed against them to punish their exercise of their First Amendment right to petition. Defendants' motion to dismiss argued that dismissal was required because Defendants were entitled to immunity from suit for their petitioning activity under the *Noerr-Pennington* doctrine.

**{12}** Avangrid opposed the motion to dismiss, arguing that (1) its complaint pleaded facts sufficient to establish damages and withstand a Rule 1-012(B)(6) NMRA motion to dismiss under New Mexico's notice pleading standards; and (2) Defendants' public comments to the Commission were not protected by the First Amendment or *Noerr-Pennington* immunity because the complaint adequately pleaded that the public comments were defamatory and made in furtherance of the crime of extortion. Avangrid also argued, in the alternative, that Defendants' comments were both objectively baseless and subjectively improperly motivated, and that they, therefore, fell within the sham exception to the *Noerr-Pennington* doctrine. *See Cordova*, 2017-NMSC-020, ¶¶ 24, 28 (explaining that the *Noerr-Pennington* doctrine provides immunity from lawsuits based on the exercise of the right to petition the government unless the petition is shown to be a sham—meaning that it is both (1) "objectively baseless, in the sense that no reasonable [petitioner] could realistically expect success on the merits," and (2) pursued with an improper subjective motive (internal quotation marks and citation omitted)). Finally, Avangrid requested leave to amend its complaint if the district court decided to grant the motion to dismiss.

**{13}** The district court considered Defendants' special motion to dismiss under the expedited procedure provided by Section 38-2-9.1(A) of the Anti-SLAPP statute. The district court concluded that *Noerr-Pennington* immunity required dismissal of the complaint. The district court also denied Avangrid's request for leave to amend its complaint, and awarded $36,000 in attorney fees to Defendants under Section 38-2-9.1(B) of the Anti-SLAPP statute.

**{14}** Avangrid appealed to this Court.

## DISCUSSION

**{15}** On appeal, Avangrid asks this Court to reverse the district court's order of dismissal and remand for trial, or, if we affirm, asks that we reverse the district court's denial of its motion to amend the complaint and remand to allow that amendment. Avangrid also challenges the amount of attorney fees awarded by the district court, claiming the court failed to base its decision on admissible evidence and that some of the hours billed were not legitimately spent on this litigation. We address the merits of Avangrid's appeal from the order of dismissal first, and then address each of the other two issues in turn.

## I. The District Court Properly Granted Defendants' Special Motion to Dismiss Avangrid's Complaint Based on Defendants' First Amendment, *Noerr-Pennington* Doctrine, Affirmative Defense

**{16}** Avangrid seeks reversal of the district court's order of dismissal on three grounds. We understand Avangrid to argue first that this Court should reverse if Avangrid shows that it has adequately pleaded its claims for defamation, prima facie tort (extortion), and tortious interference under New Mexico's notice pleading standards. Avangrid next argues that defamation and extortion are not protected petitioning activity under the First Amendment, and these claims are an exception to the *Noerr-Pennington* doctrine in addition to the sham exception. Finally, Avangrid argues that even if the *Noerr-Pennington* doctrine is the applicable substantive law, it has adequately pleaded facts sufficient to establish that Defendants' petitioning activity was both objectively baseless and subjectively improperly motivated, meeting the two requirements for the sham exception to the *Noerr-Pennington* doctrine.

## A. Avangrid's Arguments About the Sufficiency of the Allegations in its Complaint to State a Claim Are Misplaced

**{17}** Avangrid's first argument—that its complaint sufficiently pleaded tort claims—is misplaced. Avangrid asks this Court to review the district court's grant of Defendants' special motion to dismiss under the Anti-SLAPP statute as if it were a decision on an ordinary motion to dismiss a tort complaint. Avangrid's approach runs afoul of the decisions of our Supreme Court and of this Court holding that SLAPP suits are not to be treated by our courts as ordinary tort or commercial litigation: "Our Anti-SLAPP statute provides a unique procedural mechanism for the [defendants] to establish immunity predicated on the First Amendment right to petition that is separate from the underlying claims." *Valenzuela v. My Way Holdings, LLC*, 2024-NMCA-009, ¶ 21, 541 P.3d 191 (internal quotation marks and citation omitted); *accord Cordova*, 2017-NMSC-020, ¶ 18 (defining a SLAPP suit as "a strategic lawsuit against public participation"). This means that when an action bears the hallmarks of a SLAPP suit, and a special motion to dismiss is filed under the Anti-SLAPP statute, our courts must *first* "identify the

challenged activities of the target of the SLAPP suit in relation to their First Amendment protections." *Cordova*, 2017-NMSC-020, ¶ 18.

**{18}** The unique, expedited procedure provided by our Legislature in the Anti-SLAPP statute was enacted to allow the district court to consider whether dismissal is required by an affirmative First Amendment defense. The district court's decision on the affirmative defense is then subject to an expedited interlocutory appeal to this Court by either party. Our Legislature has explained that these expedited procedures were enacted to allow those whose petitioning activity is targeted by a SLAPP suit to establish First Amendment immunity early in the case and avoid the expense of extended litigation. *See* § 38-2-9.2 ("These lawsuits should be subject to prompt dismissal or judgment to prevent the abuse of the legal process and avoid the burden imposed by such baseless lawsuits.").

**{19}** We are, therefore, initially concerned only with the district court's decision that Avangrid's complaint was subject to dismissal under the First Amendment and the *Noerr-Pennington* doctrine that is properly before this Court on expedited appeal. *See Cordova*, 2017-NMSC-020, ¶ 16 (holding that Section 38-2-9.1(C) provides for an interlocutory appeal of an order granting or denying dismissal based on First Amendment defenses). To the extent that Avangrid contends that the district court improperly rejected the allegations in the complaint involving extortion, we consider those arguments in the context of whether *Noerr-Pennington* immunity shields Defendants from Avangrid's claims. We turn directly to what Avangrid acknowledges is the principal basis for the district court's order of dismissal: the court's conclusion that the *Noerr-Pennington* doctrine bars Avangrid's claims. Because we affirm the district court's dismissal of Avangrid's complaint under the *Noerr-Pennington* doctrine, we have no occasion to independently determine the legal sufficiency of Avangrid's complaint. *See Cordova*, 2017-NMSC-020, ¶ 41.

## B. The *Noerr-Pennington* Doctrine

**{20}** "While the Anti-SLAPP statute provides the procedural protections [that those who petition the government] require, the *Noerr-Pennington* doctrine is the mechanism that offers [the p]etitioners the substantive First Amendment protections they seek." *Id.* ¶ 24. "The *Noerr-Pennington* doctrine is a body of federal law that provides First Amendment protections for citizens who petition the government" and shields them from retaliation for "conduct aimed at influencing the government," provided their conduct is not a sham. *Valenzuela*, 2024-NMCA-009, ¶¶ 32-33 (internal quotation marks and citation omitted). We do not review the evolution of the *Noerr-Pennington* doctrine from its original application in anti-trust cases to its current general application to the First Amendment right to petition the government in all contexts. That history is found in our Supreme Court's decision in *Cordova*, 2017-NMSC-020, ¶¶ 24-26.

**{21}** As we have noted already, *Noerr-Pennington* First Amendment protections are not absolute. *See id.* ¶ 24. To be entitled to protection under the doctrine, the petitioning activity, "must be genuine and not a mere sham." *Id.* ¶ 27. Our Supreme Court,

consistent with the federal courts that have applied the *Noerr-Pennington* doctrine, has adopted a two-part test to determine whether petitioning activities are a sham: "First, the petitioning activities must be objectively baseless in the sense that no reasonable [petitioner] could realistically expect success on the merits." *Id.* ¶ 28 (internal quotation marks and citation omitted). This prong of the test looks to whether a petition has sufficient factual and legal support to allow a reasonable fact-finder to find in its favor. *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 63 (1993) (analogizing the objective prong to a finding that a complaint lacks probable cause). "Only upon a finding that the challenged activities are objectively baseless may [a court] proceed to the second element of the test—whether the subjective motivation underlying the challenged conduct was improper." *Cordova*, 2017-NMSC-020, ¶ 28.

**{22}**     In other words, for Avangrid to overcome Defendants' *Noerr-Pennington* defense by establishing that the petitioning activity was a sham, Avangrid must first establish that Defendants' opposition to the Avangrid-PNMR merger was so lacking in factual or legal support that the public comments could not meet the test for probable cause. *See id.* (providing that "for [a SLAPP suit plaintiff] to overcome the *Noerr-Pennington* doctrine through the sham exception, [they] must first establish that [the petitioner's] . . . petition was objectively baseless in that it did not have sufficient factual or legal support"). Only if it makes such a showing, is Avangrid then required to also show that Defendants' motive for opposing the merger was subjectively improper. *See id.* (providing that "[u]pon such showing [on the first prong], [a SLAPP suit plaintiff] must then establish that the primary purpose for the [petition] was to effectuate an improper objective"). In other words, Defendants' motive for their public comments is not relevant unless Avangrid first shows that the comments were objectively baseless.

## C.     There Is No Per Se Exception to the Application of the *Noerr-Pennington* Doctrine for Defamatory Speech or for Speech Integral to a Crime

**{23}**     Before proceeding to determine whether Defendants' public comments are subject to the sham exception to the *Noerr-Pennington* doctrine or instead are entitled to the protections of that doctrine, we address Avangrid's argument that there is a different, additional exception to the *Noerr-Pennington* doctrine and that this exception applies here. Avangrid argues that when the petitioning activity is alleged to be defamatory or engaged in to further extortion or some other crime, the petitioning activity is not protected by the First Amendment. We understand Avangrid to argue that pleading a defamatory or criminal motive or intent is alone sufficient to satisfy the sham exception, and no determination of whether the petitioning activity was objectively baseless is required. We do not agree.

**{24}**     Avangrid's argument relies primarily on dicta in the United States Court of Appeals for the Tenth Circuit's decision in *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 891-92 (10th Cir. 2000) (en banc), *abrogation recognized by CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1285 (10th Cir. 2020); *see id.* (noting that "two years after *Cardtoons*, the Supreme Court decided *BE & K* [*Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002)], which undercut the basis on which the

*Cardtoons* dicta rested"). Avangrid describes *Cardtoons*, cases relied on in *Cardtoons*, and other federal case law as holding that *Noerr-Pennington* does *not* extend to claims for defamation or libel, nor does it protect speech or conduct "'used as an integral part of conduct in violation of a valid criminal statute'" (quoting *Order*, 360 *Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, 2022 WL 4086829, *3 (S.D.N.Y. Sept. 6, 2022).

**{25}** The problem with Avangrid's argument is that this very interpretation of the *Noerr-Pennington* doctrine was rejected by the United States Supreme Court two years after *Cardtoons* was decided. *See BE & K Constr. Co.*, 536 U.S. at 537. The abrogation of the *Cardtoons*' dicta relied on by Avangrid was recognized by the Tenth Circuit in *CSMN Investments, LLC*, 956 F.3d at 1285. *BE & K Construction Co.* holds that petitioning activity is protected by the First Amendment unless it is shown to be "*both* objectively baseless *and* subjectively intended to abuse [the petitioning] process." 536 U.S. at 537 (Scalia, J., concurring) (summarizing the majority holding). *BE & K Construction Co.* rejects an exception to the *Noerr-Pennington* doctrine that would allow a court to deny First Amendment immunity based solely on an allegation or finding that the petition was motivated by an intent to defame or by criminal intent, as Avangrid argues. *See id.* at 536-37.

**{26}** The United States Supreme Court's conclusion, as explained by the Tenth Circuit in *CSMN Investments, LLC*, *see* 956 F.3d at 1286, 1290, is that in every case involving petitioning activity, a court must first determine whether the petitioning activity is "objectively reasonable." So long as the petitioning activity has a legitimate basis in the facts and the law, it is protected by the First Amendment, even if it seeks to achieve an unlawful objective. *Id.* Whether the petitioning activity is motivated by defamatory or criminal intent or other improper motive is not relevant unless and until the petitioning activity is shown to be objectively baseless. *Id.*

**D.      Avangrid Failed to Plead Facts or Present Law Sufficient to Establish That Defendants' Public Comments Were Objectively Baseless**

**1.      Standard of Review**

**{27}** We review de novo a district court's decision to grant a motion to dismiss.[3] *Valdez v. State of N.M.*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. In reviewing the district court's decision to dismiss Avangrid's complaint, the well-pleaded facts must be assumed to be true. *See Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 ("In reviewing a district court's decision to dismiss . . . , we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." (internal quotation marks and citation omitted)). In the context of a special motion to dismiss under the Anti-SLAPP statute raising a First Amendment defense, we apply a heightened pleading standard to our review of the

---

[3]We do not address Avangrid's argument asking this Court to remand for trial on the application of the *Noerr-Pennington* doctrine. Our Anti-SLAPP statute provides for an expedited resolution of Defendants' First Amendment immunity defense by special motion to dismiss. *See* § 38-2-9.1(A). Avangrid fails to provide any authority to support its request for a remand for trial.

complaint. *See Cordova*, 2017-NMSC-020, ¶ 30 ("[W]e adopt a heightened standard of pleading for claims seeking damages for conduct protected by the First Amendment."). This heightened pleading standard requires "more than conclusory allegations in the complaint." *Id.* It is not enough to simply assert that a defendant's public comments were false: a plaintiff must demonstrate that their claim that the petitioning activity is a sham under the *Noerr-Pennington* doctrine is supported by a prima facie showing of facts. *See id.* ¶ 29; *accord*, *N.M. Pub. Regul. Comm'n v. New Mexican, Inc.*, 2024-NMSC-025, ¶ 3, 562 P.3d 548.

## 2. Defendants' Public Comments Reasonably Could Have Been Expected to Affect the Commission's Decision

**{28}** To establish Defendants' petitioning activity was a sham, Avangrid first contends that Defendants could not have had an objectively reasonable expectation that their public comments, regardless of how truthful and persuasive, would affect the Commission's decision on the Avangrid-PNMR merger, and, as a result, the comments were "objectively baseless." Avangrid points to the Commission's Rule governing public comments as the basis for its argument. As previously noted, the Rule provides that public comments will be part of the record on a matter pending before the Commission, but will not be admitted as evidence at the adjudicatory hearing held on an application to the Commission. *See* 1.2.2.23(F) NMAC (stating that commenters "shall be entitled to make an oral statement or submit a written statement for the record, but such statement shall not be considered by the [C]ommission as evidence"). Avangrid contends that, given the Rule's limitation on public comments being considered admissible evidence in the adjudicatory hearing on the merger, Defendants could not reasonably have expected their public comments to influence the Commission's decision. Avangrid claims that the comments, therefore, were objectively baseless.

**{29}** Avangrid's assumption that public comments have no influence on the Commission's decision simply because they are not treated as admissible evidence in a quasi-judicial proceeding is not supported by New Mexico law. Avangrid fails to point to any prohibition on the Commission's consideration of public comments when making its decision. The Rule relied on by Avangrid states that its purpose is to facilitate public participation and obtain the input of all interested parties into the decision-making process. Our Supreme Court has acknowledged the importance of public comments in similar administrative proceedings where public input is required by statute or rule. *See In re Application of Rhino Env't Servs.*, 2005-NMSC-024, ¶¶ 24, 27, 138 N.M. 133, 117 P.3d 939 (reversing the decision at adjudication because the public's comments opposing the decision were not considered, even though those comments were not evidence).

**{30}** Avangrid's argument also misconstrues the First Amendment petition clause: the First Amendment gives all citizens the right to petition the government. In Avangrid's view, no nonparty petitioner would have an objectively reasonable basis for offering public comment because no nonparty petitioner's statement would be evidence for the Commission. The Rule, however, does not make nonparty commentators irrelevant.

Instead, the Rule contemplates that "[a]ll interested persons are afforded the opportunity to have input into cases which affect them." 1.2.2.23(F) NMAC. As the United States Supreme Court noted in *BE & K Construction Co.*, the First Amendment "speaks simply of 'the right of the people to petition the [g]overnment for a redress of grievances,'" 536 U.S. at 532 (omission omitted), and does not focus on the success of the petition. Defendants offered input on its experience with Avangrid, which the Commission could consider in making its decision on the Avangrid-PNMR merger. Defendants' experience with Avangrid and the energy industry in general gave them an objectively reasonable basis to petition and comment on the merger.

**{31}** Finally, Avangrid disregards entirely the fact that the Commission denied the Avangrid-PNMR merger as not in the public interest, and did so for some of the same reasons presented in Defendants' comments. *See* PRC Decision, ¶¶ 38, 39. Although we do not rely on the comments' success alone in finding that they were not objectively baseless, as we would if Defendants had prevailed in a court of law or in a quasi-judicial proceeding, *see Pro. Real Est. Inv'rs, Inc.*, 508 U.S. at 58 (noting, in the context of successful litigation, that the United States Supreme Court has found that a successful "effort to influence governmental action certainly cannot be characterized as a sham" (omission, internal quotation marks, and citation omitted)), we do view the Commission's adoption of the position advocated by Defendants as a relevant factor suggesting that the comments had some merit. *See CSNM Invs., LLC*, 956 F.3d at 1287 (relying on the success of a citizen's petition on a single issue as suggesting that the petition had "some merit"). Having concluded that Defendants' public comments could reasonably have been expected to influence the Commission's decision, we next turn next to Avangrid's argument that Defendants' public comments were baseless because they are false.

### 3. Avangrid Failed to Plead Sufficient Facts to Establish That Defendants' Comments Were False

**{32}** We agree that if a petition is shown to be based on falsehoods, the "objectively baseless" prong of the *Noerr-Pennington* doctrine would be satisfied. *See Valenzuela*, 2024-NMCA-009, ¶ 34 (explaining that to prove the objectively baseless prong, the plaintiff must plead facts to establish that the petitioning activity "did not have sufficient *factual* or legal support" (emphasis added)). We, therefore, next determine whether Avangrid has pleaded sufficient facts under our heightened pleading standard to establish the falsity of Defendants' comments.

**{33}** Avangrid's complaint alleges that the following statements made to the Commission by Defendants were objectively false: (1) that there were "procurement-corruption, extortion, and coercion tactics within Iberdrola and Avangrid"; (2) that Iberdrola and Iberdrola-affiliated officers have "previously been indicted in Spain for corporate espionage and procurement fraud"; (3) that Avangrid presented "risks to national security"; (4) that Avangrid "is obtaining lots of information through incorrect channels about these proceedings"; and (5) that Defendants had "discovered that

Avangrid's conduct artificially raised rates paid by consumers in New York and illegally enriched Avangrid's favorite bidders."

{34} The complaint asserts that Silva's claim to the Commission that he had "first-hand knowledge about significant procurement-corruption, extortion, and coercion tactics within Avangrid and Iberdrola" is false. Looking first at Silva's representation that he had first-hand knowledge about Avangrid and Iberdrola, the complaint, although claiming the statement is false, acknowledges that Silva was the chief executive of a security technology company working with energy utility companies, and that SLI (Silva's company) had worked with Avangrid and Iberdrola affiliates in the past. There are no facts pleaded to explain why Silva's experience does not support his claim to first-hand knowledge concerning energy utility companies in general and Avangrid and Iberdrola's activities in particular. Simply asserting the conclusion that Silva's claim to personal knowledge is false does not meet the heightened pleading standard we apply. *See Cordova*, 2017-NMSC-020, ¶ 29 ("[T]he plaintiff must make a sufficient showing to permit the court to reasonably conclude that the defendant's petitioning activities were not immunized from liability under the First Amendment." (internal quotation marks and citation omitted)). Here, Avangrid's complaint does not describe the basis given by Defendants for the allegation or allege that no basis was provided. An adequate factual basis under our heightened pleading standard should disclose the substance of the comment alleged to be false, and provide facts that rebut that allegation.

{35} As to Silva's testimony about procurement-corruption and coercion tactics within Avangrid and Iberdrola, the complaint again includes only a bald, conclusory denial, stating that "[n]either Avangrid nor Iberdrola engage in such tactics," without offering facts either about the particular conduct Silva relied on in his comments, or the facts showing Defendants' description of that conduct was false. As already noted, a conclusory pleading void of facts is not sufficient to make the required prima facie factual showing that Defendants' claims were false. *See id.*

{36} The primary exception to the complaint's reliance on conclusory assertions of falsity is in regard to Defendants' comments about the investigation in Spain into Iberdrola-affiliated executives. The complaint alleges that Defendants stated in their public comments that "various Iberdrola-affiliated individuals have been indicted in Spain for corporate espionage and procurement fraud." While claiming that this statement is "false, in many respects," Avangrid acknowledges that a Spanish high court "is conducting a fact[-]gathering investigation," which includes "certain Iberdrola-affiliated executives." Avangrid also acknowledges that the investigation is exploring whether a provider of security services violated Spanish law—a matter related to Defendants' comments pertaining to national security. Avangrid asserts in its complaint that Silva's comments are baseless because he failed to adequately distinguish between an indictment and an investigation. Avangrid's complaint admits that the Spanish "investigation" is a proceeding conducted by Spain's high court, and that testimony is taken by a judge of that court charged with determining whether the government's claims of criminal activity are supported by the evidence presented.

**{37}**    Based on these pleaded facts, we do not find that Defendants' use of the term "indicted" renders, what Avangrid concedes is otherwise a correct description of the Spanish high court investigation, objectively baseless. Based on the factual allegations in Avangrid's complaint, Defendants' comments truthfully questioned whether Iberdrola-affiliated executives should be permitted to play an important role in the provision of energy services in New Mexico given the criminal investigation in Spain. The differences between the United States' and Spain's criminal process, and whether the term "investigation" or "indictment" is the proper term to describe the Spanish criminal process, would not prevent a reasonable fact-finder from understanding the relevance of Defendants' comments to the PRC's Decision.

**{38}**    We note, moreover, that the PRC Decision specifically relies on the "ongoing criminal investigation in Spain involving high level officers" of Iberdrola as one of the Commission's reasons for denying the merger application, establishing that a significant part of Defendants' public comments was both meritorious and successful. *See* PRC Decision, ¶ 39; *see, e.g.*, *CSNM Invests., LLC*, 956 F.3d at 1287 (relying on the success of a citizen's petition on a single issue as suggesting that the citizen's petition had "some merit," and was not baseless).

**{39}**    Having found that Avangrid failed to plead facts sufficient to establish that Defendants' petitioning activity was baseless we need not proceed further: We affirm the district court's dismissal of the complaint.

## II.    The Denial of Leave to Amend Complaint

**{40}**    Avangrid next argues that the district court's denial of it Rule 1-015(A) NMRA motion to amend the complaint was an abuse of discretion. Avangrid contends that it requested—and was entitled to—an opportunity to bolster the facts pleaded to meet the *Noerr-Pennington* standard.

**{41}**    Rule 1-015(A) provides that leave to amend pleadings shall be "freely given when justice requires." This Court reviews the denial of a motion for leave to amend for an abuse of discretion. *See Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶ 24, 139 N.M. 274, 131 P.3d 661 ("An abuse of discretion occurs when the court exceeds the bounds of reason, all the circumstances before it being considered." (internal quotation marks and citation omitted)). "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted).

**{42}**    The district court's decision to deny the motion for leave to amend must be considered in the context of the Anti-SLAPP statute's plainly expressed intent to provide for expedited resolution of a motion to dismiss. *See* § 38-2-9.1(A). Although the Anti-SLAPP statute does not directly address motions for leave to amend the complaint, it does plainly state legislative intent to subject lawsuits found to be baseless and aimed at chilling the right to petition the government "to prompt dismissal or judgment to

prevent the abuse of the legal process and avoid the burden imposed by such baseless lawsuits." Section 38-2-9.2. Given this policy disfavoring delay in dismissing a SLAPP suit and the paucity of Avangrid's argument supporting amendment, we hold that there was no abuse of discretion in the district court's denial of Avangrid's motion for leave to amend.

### III. Amount of Attorney Fees Awarded

**{43}** Finally, Avangrid challenges the amount of attorney fees awarded to Defendants under the Anti-SLAPP statute's provision awarding "reasonable attorney fees and costs" to a defendant who prevails on a special motion to dismiss. *See* § 38-2-9.1(B). Avangrid does not challenge the district court's decision to award fees to Defendants. It contends only that the district court erred in the amount awarded, making the following two arguments: (1) although records of the hours spent by Defendants' counsel were provided, there was no sworn statement by counsel or exhibits or testimony admitted into evidence supporting counsel's billing records; and (2) a total of $3,820 of Defendants' fee request of $40,168.49 was for work unrelated to the defense of the case. We address each contention in turn.

**{44}** First, although Avangrid alleges that a sworn statement was required to verify the authenticity and accuracy of the thirty-one pages of billing records submitted by Defendants' counsel, Avangrid does not explain why the sworn statement provided in Defendants' answering memorandum in the district court was inadequate. We therefore do not address this further.

**{45}** Avangrid's second contention focuses on twenty-nine hours that Avangrid alleges were not sufficiently related to this litigation to be compensable. Avangrid argues that the district court abused its discretion by including these hours in the fee award. We need not address this argument because the record reveals that the district court subtracted the hours identified by Avangrid from the fee awarded. Defendants requested $40,168.49. Avangrid claimed $3,820 of Defendants' requested fees were for work unrelated to the defense of the case. The district court awarded Defendants $36,000 in fees, reducing Defendants' original request by $4,168.49, slightly more than the $3,820 amount challenged by Avangrid. Avangrid's brief on appeal does not acknowledge this reduction or provide any argument about why it did not address their concerns. We therefore do not address this argument further.

### CONCLUSION

**{46}** For the reasons stated, we affirm the district court.

**{47} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**KATHERINE A. WRAY, Judge**